UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MICHAEL J. DOMINGUE | CIVIL ACTION NO. 6:10-cv-00921 |
| VERSUS | JUDGE HANNA |
| CHEVRON USA INC. | BY CONSENT OF THE PARTIES |

## MEMORANDUM RULING

Pending before this Court is the motion for summary judgment (Rec. Doc. 32), which was filed by the defendant, Chevron U.S.A., Inc. The motion is opposed. (Rec. Doc. 55). Oral argument was held on August 22, 2012. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the motion is DENIED.

### I.   Factual Background

This lawsuit arises out of an accident that occurred on a permanent offshore production platform on August 12, 2009. On that date, the plaintiff Michael J. Domingue, an experienced offshore service technician, was employed by Wood Group[1] as a valve service technician. Domingue and Wood Group employee Fred

---

[1] At some point following the accident, Wood Group became GE Oil & Pressure Control, LP.

Guidry were assigned by their employer to perform a job on two fixed platforms that are owned and operated by the defendant Chevron U.S.A., Inc., the Eugene Island 252C and 252L platforms. The work that Domingue and Guidry were doing was valve and wellhead service and maintenance. The 252C platform has three levels – the top deck, the well deck, and the cellar deck. The work being performed by Domingue and Guidry required them to move between the cellar deck and the well deck, and the accident occurred when Domingue was attempting to descend from the well deck to the cellar deck.

The only way to travel between the cellar deck and the well deck is by means of a fixed vertical ladder. At the time of the accident, a guard rail surrounded the opening in the flooring of the well deck that permits access to the ladder, and a hinged, vertically-opening lift bar (sometimes alternatively referred to as a drop bar) had to be opened in order to access the ladder. The lift bar could not be left up in an open position. Instead, a stop mechanism and the force of gravity ensured that the lift bar would fall down to the closed position when it is not being used. After the accident, the lift bar was replaced with a swing gate that opens horizontally rather than vertically.

At approximately 10:30 a.m. on the date of Domingue's accident, Chevron stopped work on the platform due to an approaching rain storm. After the storm

passed, Domingue and Guidry were cleared to return to work. At approximately 1:30 p.m., Domingue decided to travel from the well deck to the cellar deck to retrieve a tool. To access the ladder, Domingue lifted the lift bar with his left hand, grabbed the ladder with his right hand, then stepped onto the ladder with his right foot, while his left foot remained on the well deck. As Domingue attempted to step onto the ladder with his left foot, his right foot slipped off the ladder, and he began to fall. Domingue held onto the lift bar as he fell and, as the bar dropped down, the biceps muscle in his left arm tore, necessitating surgical repair.

## II.    THE APPLICABLE LAW

Domingue's accident occurred on a fixed platform located in the Gulf of Mexico off the coast of Louisiana on the Outer Continental Shelf. Accordingly, Louisiana negligence law applies to the parties' dispute.[2] The Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. § 1331, *et seq.*, provides that the law of the adjacent state serves as surrogate federal law when the controversy arises on a site covered by the OCSLA, federal maritime law does not apply of its own force, and state law is not inconsistent with federal laws and regulations. Here, it is undisputed

---

[2] See, e.g., *Alleman v. Omni Energy Services Corp.*, 580 F.3d 280, 285-86 (5th Cir. 2009); *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 366 (1969).

that there is no maritime nexus, and Louisiana law is not inconsistent with federal law. Accordingly, Louisiana law applies.

### III.  THE CONTENTIONS OF THE PARTIES

The plaintiff generally contends that Chevron failed to provide Domingue with a safe working environment, in violation of the duty owed by the owner of an offshore platform to the employees of independent contractors working on the platform, citing *Chevron v. Dupre*, 20 F.3d 154, 157 (5th Cir. 1994). The plaintiff also asserts a premises liability claim, contending that his accident was caused by the condition of the platform or, more specifically, by the condition of the ladder and/or the lift bar on the platform. The plaintiff seeks to recover under Louisiana Civil Code Article 2317 or under Louisiana Civil Code Article 2322. Article 2317.1 states, in pertinent part, that:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Article 2322 similarly states, in pertinent part, that:

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result

> of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

The Fifth Circuit has held that an offshore platform is a building for purposes of Article 2322, and that liability may be imposed under Article 2322 against a building's owner when a defect or ruinous condition is located in an appurtenance to the building.[3]

In its motion, Chevron contends that the condition of the ladder and lift bar was open and obvious, precluding a finding that either was unreasonably dangerous, citing *Ardoin v. Lewisburg Water System*, 963 So.2d 1049, 1051 (La. App. 3 Cir. 2007). Chevron supports this contention with undisputed evidence that the plaintiff had used the ladder several times before the accident without being injured. Chevron further contends that a premises owner has no duty to warn of an open and obvious condition, citing *Pitre v. Louisiana Tech. Univ.*, 673 So.2d 585, 590 (La. 1996).

The plaintiff countered, arguing more specifically, as follows:

(1) that the design, construction, and/or condition of the lift bar and ladder made them unreasonably dangerous in that the design prevented a person using the

---

[3] *Coulter v. Texaco, Inc.*, 117 F.3d 909, 914 (5th Cir. 1997).

ladder from having three points of contact with the ladder at all times, and the condition included an inappropriately placed first rung on the ladder, and rungs that were too small, rusty, and lacked a non-slip coating;

(2) that Chevron failed to replace or repair the lift bar and ladder or provide warnings concerning their condition before the accident, but replaced the lift bar with a swing gate after the accident;

(3) that the risk of danger caused by the lift bar and ladder was not open and obvious to the plaintiff; and

(4) that even if the plaintiff had been aware of the danger presented by the lift bar and ladder, this would not bar his recovery but would require an apportionment of comparative fault.[4]

## IV.  THE STANDARD FOR ANALYZING A MOTION FOR SUMMARY JUDGMENT

The defendant seeks summary judgment in its favor. Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. A fact is material if proof of its existence or nonexistence might

---

[4]   Rec. Doc. 55 at 7.

affect the outcome of the lawsuit under the applicable governing law.[5] A genuine issue of material fact exists if a reasonable jury could render a verdict in favor of the nonmoving party.[6]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[7] If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact.[8] All facts and inferences are construed in the light most favorable to the nonmoving party.[9]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[5] *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (*per curiam*), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[6] *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[7] *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Washburn v. Harvey*, 504 F.3d at 508.

[9] *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

claim.[10] The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[11]

## V. ANALYSIS

In support of its motion, Chevron makes two arguments that are difficult to reconcile. First, Chevron argues that the ladder and lift bar were perfectly safe to use and had been in use for over twenty years without a reported accident. Second, Chevron asks the Court to assume that the deficiencies in the ladder and lift bar arrangement identified by the plaintiff do exist but to find that, because those conditions are open and obvious, Chevron cannot be found liable for the plaintiff's accident because it owed to duty to warn of or repair the "defect". The Louisiana Supreme Court has held that whether a thing contains a condition creating an unreasonable risk of harm is a mixed question of fact and law.[12] The Louisiana Supreme Court has also held that legal causation is a mixed question of fact and

---

[10] *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

[11] *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[12] *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 03/04/98), 708 So.2d 362, 364.

law.[13] Therefore, finding the existence of factual disputes with regard to either the existence of an allegedly unreasonable condition or the cause of an accident would preclude summary judgment in Chevron's favor.

In analyzing each of Chevron's arguments, the Court finds that genuine issues of material fact exist regarding both the cause of the plaintiff's accident and also regarding whether the ladder and lift bar arrangement (or either the ladder or lift bar individually) was unreasonably dangerous.

Following Domingue's accident, Chevron conducted an internal investigation into the cause of the incident. The report prepared by Chevron's health, environment, and safety specialist Craig Berkenmeier, faults the design of the ladder and lift bar for failing to consider human factors, noting that the relationship of the lift bar and the first rung of the ladder could give rise to an awkward[14] position for the user, and that the initial step onto the ladder is approximately six inches below the deck level, requiring the user to access the ladder in precisely the manner that the plaintiff did.[15]

---

[13] *Brooks v. State ex rel. Dept. of Transp. and Development*, 2010-1908 (La. 07/01/11), 74 So.3d 187, 196.

[14] Domingue also described the lift bar and ladder arrangement as "awkward." Rec. Doc. 55-6 at 19, 22-23, 25-27, 61. Chevron's operator on the platform where the accident occurred, Ray Duet, similarly described the lift bar and ladder arrangement as "awkward." Rec. Doc. 55-14 at 17-18.

[15] Rec. Doc. 55-4 at 5.

The report goes on to state that the rungs on the ladder appear to be made from 3/4" pipe welded between uprights, did not have any type of skid-resistant coating, and were rusted. The report states that when the rungs are dry, the rust has a rough feeling but rusted metal becomes slippery when wet.[16] Another Chevron post-accident report found that the access area to the ladder was less than adequate, that the access into the ladder area requires workers to begin descending the ladder while holding up the drop bar, and that although the ladder was built to specifications, the awkward entry onto the ladder may place workers at an increased risk in certain situations.[17] Even among Chevron personnel, there were some who thought the design of the drop bar was a causal factor in the accident, and some who thought that it was not.[18]

A combination of factors led to the accident. The photographs of the accident scene submitted into evidence[19] show that there is no place to stand between the ladder and entrance to the opening in the deck without having to hold up the lift bar. This makes achieving three points of contact with the ladder extremely difficult.

---

[16] Rec. Doc. 55-4 at 6.

[17] Rec. Doc. 55-5 at 1-2.

[18] Rec. Doc. 55-8 at 38.

[19] Rec. Doc. 32-1 at 7; Rec. Doc. 55-9 at 1.

Testimony from several depositions was put into evidence. Some people said they just let the lift bar drop behind them;[20] others said they never just let it drop but move it down into the lowered position.[21] Some people said they rested the bar on their shoulders rather than holding it in their left hand;[22] others said this was not possible.[23] Chevron's principal investigator Cliff Bernard testified that resting the lift bar on the shoulder instead of holding it would be possible for some men but not for others, depending on their height.[24] The plaintiff and Chevron's representatives agree that the design of the lift bar and ladder arrangement is awkward, and Chevron is in the process of replacing all of its lift bars with swing gates.[25] There is, however, a dispute within Chevron as to whether the lift bar or swing gate is a better design.[26] Thus, there is a genuine dispute as to whether the design of the ladder and lift bar arrangement is unreasonably dangerous as well as a genuine issue of material fact as to whether the arrangement caused or contributed to the cause of the accident.

---

[20]   Rec. Doc. 55-10 at 20.

[21]   Rec. Doc. 55-6 at 54.

[22]   Rec. Doc. 55-13 at 17; Rec. Doc. 55-16 at 13.

[23]   Rec. Doc. 55-7 at 31; Rec. Doc. 55-15 at 15-16.

[24]   Rec. Doc. 55-17 at 7-10.

[25]   Rec. Doc. 55-8 at 48-49.

[26]   Rec. Doc. 55-11 at 10-11.

In addition, the condition of the ladder itself has been called into question. Chevron contends that the ladder was safe, but the plaintiff contends that the ladder was unreasonably dangerous because the first rung on which one would place his or her foot was significantly below deck level, its rungs were too small, the rungs had no non-skid coating, and the rungs were rusty, making them slippery when wet. Chevron's own report describes the root causes of the accident as including the size of the ladder's rungs, the lack of non-skid coating, and the rusty rungs that become slippery when wet. Add to this the fact that it rained a few hours before the plaintiff's accident. At a minimum, the undersigned finds, with regard to the ladder itself, that there is a genuine dispute as to whether the ladder's rungs were wet when the accident occurred and, consequently, whether the condition of the ladder was unreasonably dangerous and whether the condition of the ladder caused the accident.

Chevron suggests that, even assuming there to be design defects as alleged by the plaintiff, those deficiencies should be disregarded because the risk of harm created by those defects was open and obvious to the plaintiff at all times. Chevron contends that a finding that the risk of harm was open and obvious would mandate a finding that Chevron owed no duty to the plaintiff, resulting in dismissal of the plaintiff's lawsuit. The plaintiff contends, however, that such a finding would mandate only an apportionment of fault. At this stage, however, it is not necessary

to resolve that legal question since there is a genuine factual issue as to whether the risk of harm was open and obvious to Domingue at the time of his accident.

Domingue testified that the ladder did not look wet when he began his descent just before the accident, but when he examined his gloves after the accident, he found that they were wet.[27] Thus, at least with regard to one of the alleged risk factors – the slippery condition of the ladder worsened by rain on rusty metal – there is a genuine dispute as to whether the condition of the ladder and the risk it posed was open and obvious to the plaintiff just before the accident occurred.

In summary, then, applying the jurisprudence set forth above, and considering all of the information submitted at this summary judgment stage, the burden of production associated with summary judgment motions, the legal presumptions that attach to evidence produced by a non-movant, and the prohibition against weighing evidence in this context, this Court finds that reasonable persons could differ with regard to whether any risk presented by the ladder and lift bar was obvious to the user, despite the lack of evidence of previous accidents and the ubiquity of such ladders and lift bars across the Gulf of Mexico, especially since Domingue testified that he did not think the ladder was wet when he began to climb onto it, but realized after the incident that it was wet. This Court also finds that reasonable persons could

---

[27] Rec. Doc. 55-6 at 62-64.

differ as to whether the design of the lift bar and its proximity to the opening in the platform deck, the lack of non-skid material on the ladder rungs, the size of the ladder rungs, the amount of rust on the ladder rungs, and the placement of the first rung of the ladder made the ladder and/or the lift bar unreasonably dangerous.

Because material issues of fact remain, it would be inappropriate at this point to absolve Chevron from all responsibility. Accordingly, Chevron's motion for summary judgment is denied.

Signed at Lafayette, Louisiana, this 24th day of August 2012.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE